UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| WAL-MART REAL ESTATE BUSINESS TRUST, )<br>     Plaintiff, )<br>-v- )<br>     )<br>EASTWOOD, LLC, and )<br>EASTWOOD HOLDINGS, LLC, )<br>     Defendants. )<br>_____ ) | No. 1:13-cv-1348<br><br>HONORABLE PAUL L. MALONEY |

**ORDER DENYING AS MOOT IN PART AND GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO COUNTERCLAIMS**

This lawsuit arises from a contract dispute related to a lessee's rights and obligations to expand its retail facility in Lansing Township, Michigan. Having reviewed the record and the relevant legal authority, the motion will be resolved without a hearing. *See* W.D. Mich. LR Civ. P. 7.2(d).

**I.    Procedural History**

On August 22, 2014, the Court issued an order granting Wal-Mart's motion to dismiss as to Eastwood's fraud allegations for failure to state claims upon which relief could be granted, and granting Wal-Mart's motion to dismiss or alternatively, summary judgment as to Eastwood's remaining contract claims. (ECF No. 86.)

On August 29, 2014, Eastwood filed a motion to amend/correct its answer and counter-complaint. (ECF No. 90.) On September 19, 2014, Eastwood filed a motion for reconsideration regarding the Court's original order dismissing Eastwood's counterclaims. (ECF No. 101.) The latter motion was referred to the magistrate judge, who granted the motion to amend/correct and dismissed the motion for reconsideration without prejudice as moot on September 24, 2014. (ECF No. 110.)

1

On September 26, 2014, Eastwood filed its first amended answer and first amended counterclaim. (ECF No. 111.) Wal-Mart filed a motion to strike in part Eastwood's first amended answer and counterclaim (ECF No. 117), which was granted by the magistrate judge. (ECF No. 134.) Eastwood then filed another amended answer and counterclaim to bring it in accordance with the magistrate judge's order. (ECF No. 137.) Both parties then stipulated that Wal-Mart's motion for summary judgment and dismissal of counterclaim (ECF No. 122) was deemed Wal-Mart's responsive pleading to the final amended answer and counterclaim. (ECF No. 155.)[1][2]

In the meantime, on November 13, 2014, Eastwood filed a renewed motion for reconsideration regarding the Court's original order. (ECF No. 138.) Curiously, rather than simply resting on its last amended answer and counterclaim, Eastwood brought the motion to reconsider on the partial basis that the Court should consider "newly developed evidence" that Eastwood had presented in a motion for judgment on the pleadings *after* its amended answer and counterclaim. (*Id.*) The Court denied the motion for reconsideration, stating that the "new evidence does not point to a palpable defect by which the Court was misled." (ECF No. 198.)[3]

In Eastwood's original motion to amend/correct, it noted that "Plaintiff . . . brought an early motion for dismissal of Eastwood's Counterclaim in this matter on the basis of the pleadings, which motion was granted by this Court on August 22, 2014 (Doc. No. 86)." In a footnote in that sentence, Eastwood stated "Wal-Mart, alternatively, requested summary judgment on the basis of 'no genuine issue of material fact.' It appears the Court granted the motion based on the pleadings, although it discussed in dicta why it might have granted the

---

[1] This is where the ECF system lost track of the original motion, as it was not reinitiated as "ripe" for the Court's consideration.
[2] Eastwood had also filed a motion for judgment on the pleadings on October 10, 2014 (ECF No. 119); Wal-Mart then filed a motion for partial summary judgment. (ECF No. 166.) On July 27, 2015, the Court denied both motions. (ECF No. 218.)
[3] Needless to say, it's readily apparent to the Court why the ECF system lost track of the motion before the Court today. The sordid history of the motion underscores the out-of-control motions practice and acrimonious nature of this litigation.

motion on the basis of 'no genuine issue of material fact,' with the limited facts before it." (ECF No. 90. at PageID.1304.) Nonetheless, "a party may file a motion for summary judgment *at any time* until 30 days after the close of all discovery." Fed. R. Civ. P. 55(b). Thus, if the Court determines that genuine issues of material fact do not exist, "at any time," it may grant such a motion. *See id.*

Eastwood then proceeded to argue that Sixth Circuit law generally provides that a district court should permit a plaintiff to file a curative amendment in the case of a dismissal under *Rule 12(b)(6)*. (*See id.* at PageID.1305.) However, the Court, in its original opinion and order, announced the following actions: (1) granted Wal-Mart's motion for summary judgment with respect to Eastwood's breach of contract and equitable relief claims (*see* ECF No. 86 at PageID.1267–68); and (2) dismissed Eastwood's fraud claims under Rule 9(b) (*see id.*). While the magistrate judge allowed Eastwood to amend its complaint (ECF No. 110), that order also provided that "Defendants shall file any motion for reconsideration of the Court's August 22, 2014, Memorandum Order (Dkt. 86) within 21 days of the filing of Defendants' corrected amended counter-complaint." (ECF No. 110 at PageID.1676.)

The Court infers that the magistrate judge allowed Eastwood to amend its counterclaims,[4] as Eastwood argued for (*see* ECF No. 90 at PageID.1305), but the amended claims that the Court dismissed on summary-judgment grounds did not require additional adjudication.[5] The fact that Eastwood filed a motion for reconsideration on the grounds of "newly discovered evidence" underscores the fact that everyone should have understood the Court's grant of Wal-Mart's motion for summary judgment with respect to most counterclaims to be a final order, requiring a

---

[4] Of course, Eastwood probably amended *all* of its counterclaims to preserve those for appeal purposes.
[5] If the magistrate judge thought that amendments could be laid *for all* counterclaims, it would have been unnecessary to allow a motion for reconsideration. Even if the magistrate judge intended to allow such amendments for the claims that the Court granted on summary-judgment grounds, this Court enjoys "inherent power to review [even a] final decision of its magistrates except in situations by statute or valid court rule the magistrate is empowered to make final disposition." *See, e.g., Bruno v. Hamilton*, 521 F.2d 114, 116 (8th Cir. 1975).

3

motion for relief other than one for leave to amend. *Cf. Network Commc'ns v. Mich. Bell Telephone Co.*, 906 F.2d 237, 238–39 (6th Cir. 1990) ("Although the claims . . . were decided by summary judgment, resurrection of the lawsuit of the complaint is nonetheless possible where . . . the district court has recorded an express intent to adjudicate a *pending* motion to amend." (emphasis added)). Further, the order denying reconsideration addressed the claims that the Court previously disposed of through summary judgment. (*See* ECF No. 198.)

In light of the fact that the Court denied Eastwood's motion for reconsideration with respect to the claims that it had previously granted Wal-Mart's motion for summary judgment on (*see* ECF Nos. 121, 138, 198), along with the Court's original reasoning in its opinion and order (*see* ECF No. 86) hereby incorporated in total, Eastwood's counterclaims respecting breach-of-contract, equitable relief, and promissory estoppel grounds contained in Counts I, II, and III of the amended complaint are affirmed to have been **DISMISSED**, and do not require additional adjudication. Thus, the Court **DENIES AS MOOT** Plaintiff's motion for summary judgment with respect to those claims.[6] (ECF No. 123.)

However, the Court must formally adjudicate the renewed motion with respect to claims that the Court previously dismissed under Rule (9)(b) since the magistrate judge allowed Eastwood to amend its counter-complaint. Those claims, sounding in "fraud," largely fall under Count II of Eastwood's amended counter-complaint. (*See* ECF No. 137 at PageID.2215–18.) The Court must so rule in part because it's not clear that the fraud claims were the subject of the order denying Eastwood's motion for reconsideration, as those claims were dismissed and leave to amend was granted. (*See* ECF No. 198.) The Court must first analyze the differences between the allegations of fraud in the original count and the amended count.

---

[6] Even if those claims required additional adjudication, the amendments to the complaint fail to move the needle. The Court is confident to rest its reasoning on the original grounds contained in the opinion and order. (*See* ECF No. 86.)

## Amended Counterclaim (ECF No. 137)

### Count II – Specific Performance /Fraud in the Inducement/Promissory Estoppel

56. Eastwood re-alleges and incorporates by reference the preceding paragraphs as if set forth herein.

57. On repeated occasions throughout the parties' negotiation, as well as in the Lease Documents, ECR, and the drawings appended thereto, Wal-Mart represented to Eastwood that any expansion of the building on the leased Premises would be for an approximately 213,234 square foot building, with two phase development in accordance with the First Lease Amendment, ECR, PUD, Expansion Conditions and other applicable building restrictions.

58. Additionally, the other representations set forth above also induced Eastwood to enter into the various documents governing the transaction.

59. Eastwood also anticipated a certain amount of commercial synergy from the Wal-Mart site being developed as represented.

60. By means of the representation Wal-Mart made to Eastwood, Wal-Mart was able to obtain a 22+ acre site for Wal-Mart, at an initial rent of $650,000.00 per year (approximately $29,545.45 per acre, per year ($650,000.00/22 = $29,545.45), which was deeply discounted from the per acre prices of land at the shopping center.

61. By contrast, the Sam's Club store, which is about 130,000 square feet, sitting on approximately 12+ acres had an initial rent of $ 500,000.00 per year ($ 41,666.67 per acre, per year; $ 500,000.00/12 = $41,666.67).

62. Eastwood's interest in contracting with Wal-Mart for a 22+ acre site, at the discounted rental rate agreed, was premised on the representations set forth above, and the eventual existence of a Super Center as an "anchor" location in the shopping development, thereby increasing the property's value.

63. Wal-Mart's expansion and development intentions were clear, definite, and unequivocal, and were specifically made to induce Eastwood to enter into the long-term ground lease.

64. In reliance on the representations, Eastwood:
    a. provided Wal-Mart with valuable land and parking area, which Wal-Mart will not need if permitted to expand as it now intends;
    b. provided Wal-Mart with a discounted rental rate;
    c. installed utilities sufficient for a building the size of the proposed expansion,
    d. also agreed to a smaller initial building to give Wal-Mart a chance to train its employees before the expansion took place.

5

65. Wal-Mart now claims that it may carry out its expansion in a manner not in accordance with the terms of the various written and oral representations, nor with the written intent of the parties, and has taken actions in furtherance of same.

66. If it is determined that the Lease Documents do not require Wal-Mart's expansion to be in accordance with the parties' understood agreement, Wal-Mart made a false or reckless representation affecting a material aspect of the Lease Documents, intending for the representation to be relied upon.

67. Wal-Mart knew when it made the representation that, without it, Eastwood would not have leased the amount of land that it did to Wal-Mart, nor provided such preferential rents and terms.

68. Wal-Mart also knew the representation was either false or reckless when made, as it did not have a definite intent to complete a full Super Center expansion (to approximately 213,000 square feet), nor to do so in a two phase development.

69. At the time that Wal-Mart made the representations regarding the size of and other matter related to the expansion, it could reasonably foresee that its failure to comply with the terms of the expansion would cause damage to Eastwood.

70. Eastwood was damaged and continues to be damaged in that Wal-Mart continues to pay a preferential rental rate for valuable commercial property that Wal-Mart is not using and will not be using under its improper expansion plan, as well as in other ways set forth.

71. Wal-Mart has wrongfully pursued an expansion that is not in accordance with the contractual requirements of the Lease Documents, and to avoid injustice, this Court must specifically enforce Wal-Mart's promise that any expansion would be in accordance with the drawings attached to the ECR.

72. In the alternative, because the Lease Documents were fraudulently induced by Wal-Mart's false representations, they are voidable by Eastwood.

WHEREFORE Counter-Plaintiffs Eastwood, LLC and Eastwood Holdings, LLC respectfully request this Court enter an Order:

    A. Declaring Counter-Defendant in breach of the Lease Documents OR declaring the Lease Documents void due to fraudulent inducement of same;

    B. Finding Counter-Defendant liable for all incidental, consequential, punitive, and exemplary damages arising out of its misrepresentations;

    C. Granting Counter-Plaintiffs their costs and attorneys' fees incurred in defense of the Complaint; and

    D. Granting Counter-Plaintiffs such other relief as is just and proper under the circumstances.

## Original Counterclaim (ECF No. 53)

### Count II – Specific Performance /Fraud in the Inducement/Promissory Estoppel

35. Eastwood re-alleges and incorporates by reference the preceding paragraphs as if set forth herein.

36. On repeated occasions throughout the parties' negotiation, as well as in the Lease Documents, ECR, and the drawings appended thereto, Wal-Mart represented to Eastwood that any expansion of the building on the leased Premises would be for an "approximately 222,347 square foot building and related improvements for use as a Wal-Mart Super Center ("Lessee's Building") . . ." Ground Lease ¶6(b).

37. Eastwood's interest in contracting with Wal-Mart was premised on the eventual existence of a Super Center as an "anchor" location in the shopping development, thereby increasing the property's value.

38. Wal-Mart's expansion intentions were clear, definite, and unequivocal, and were specifically made to induce Eastwood to enter into the long-term Ground Lease.

39. In reliance on the representations, Eastwood installed utilities sufficient for a building the size of the proposed expansion, provided parking sufficient for a building the size of the proposed expansion, and agreed to a lower rental rate than it would otherwise have required. Eastwood also agreed to a smaller initial building to give Wal-Mart a chance to train its employees before the expansion took place.

40. Wal-Mart now claims that it may carry out its expansion in a manner not in accordance with the terms of the Lease Documents nor with the written intent of the parties, and has taken actions in furtherance of same.

41. If it is determined that the Lease Documents do not require Wal-Mart's expansion to be in accordance with the parties' understood agreement, Wal-Mart made a false or reckless representation affecting a material aspect of the Lease Documents, intending for the representation to be relied upon.

42. Wal-Mart knew when it made the representation that, without it, Eastwood would not have leased the amount of land that it did to Wal-Mart, nor provided such preferential rents and terms.

43. Wal-Mart also knew the representation was either false or reckless when made, as it did not have a definite intent to complete a full Super Center expansion (to approximately 223,000 square feet).

44. At the time that Wal-Mart made the representations regarding the size of the expansion, it could reasonably foresee that its failure to comply with the terms of the expansion would cause damage to Eastwood.

45. Eastwood was damaged and continues to be damaged in that Wal-Mart continues to pay a preferential rental rate for valuable commercial property that Wal-Mart is not using and will not be using under its improper expansion plan.

46. Wal-Mart has wrongfully pursued an expansion that is not in accordance with the contractual requirements of the Lease Documents, and to avoid injustice, this Court must specifically enforce Wal-Mart's promise that any expansion would be in accordance with the drawings attached to the ECR.

47. In the alternative, because the Lease Documents were fraudulently induced by Wal-Mart's false representations, they are voidable by Eastwood.

WHEREFORE Counter-Plaintiffs Eastwood, LLC and Eastwood Holdings, LLC respectfully request this Court enter an Order:

    A.    Declaring Counter-Defendant in breach of the Lease Documents OR declaring the Lease Documents void due to fraudulent inducement of same;

    B.    Finding Counter-Defendant liable for all incidental, consequential, punitive, and exemplary damages arising out of its misrepresentations,

    C.    Granting Counter-Plaintiffs their costs and attorneys' fees incurred in defense of the Complaint; and

    D.    Granting Counter-Plaintiffs such other relief as is just and proper under the circumstances.

In the Court's view, Eastwood did very little to amend the fraud claims, and those claims certainly do not rise to the level of surviving heightened pleading standards. *See* Fed. R. Civ. P. 9(b) ("[T]he circumstances constituting fraud . . . shall be stated with particularity."). Eastwood did identify Chris Danos as a person making a narrow subset (but not all) of the alleged representations, at the offices of Eastwood.[7] (ECF No. 111.) However, such representations "at the time of that meeting" with Mr. Danos occurred "in or about late fall or early winter of 2001." Such a designation of a broad "in or about" period of several months as to the time of the alleged meeting still does not satisfy requirements of Rule 9. *See, e.g., Klein v. Autek Corp.*, 147 Fed. App'x 270, 275 (3d Cir. 2005) (references to vague and generic timeframes are insufficient under Rule 9). In addition to alleged statements by Mr. Danos, Eastwood's amended counterclaims reference other representations of non-specific origin, date, substance, and location, all of which fail to satisfy the requirements of Rule 9. (*See, e.g.,* ECF No. 123 at PageID.2050–51.) None of those allegations state the who, when, or where of the alleged fraudulent statements. The Court finds and adopts as persuasive all of Wal-Mart's arguments and factual references contained in its brief. (*See id.* at PageID.2050–52.)

Further, it appears that the parties agree that the Court's prior opinion and order on this matter suggest this obvious conclusion with respect to these fraud claims. As Eastwood states in its response, "[t]he only issue that Eastwood had with the final draft of the joint motion was that it did not want to include language saying that it had 'intended' to dismiss its own Amended Counterclaim."[8] (ECF No. 247 at PageID.3748.) Even Eastwood's proposed motion states:

> That while Wal-Mart's Motion to Dismiss the Amended Counterclaim was never formally the subject of a hearing or specifically identified in any prior order of the Court, the Court finds: (a) its prior rulings have resolved the Amended

---

[7] The Court will note, however, that Eastwood did not really tie the alleged misrepresentation into the *fraud* claims.
[8] The parties' failure to agree on the language of a stipulation or joint motion resolving this issue is merely one example in a long pattern of disagreement and lack of resolve to work together.

9

>Counterclaim, and (b) the amendments presented in the Amended Counterclaim do not materially alter the disposition of the Amended Counterclaim.

(ECF No. 247-3 at PageID.3762.)[9] It cannot seriously be argued otherwise. The Court's grounds for dismissing the fraud counterclaims included: (a) "Eastwood does not provide any information as to who made statements inducing Eastwood to enter into the contract, where, and when such statements were made"; and (b) "it was unreasonable for Eastwood to rely on the alleged oral statements because agreements related to real property, including leases, fall within the statute of frauds." (*See, e.g.*, ECF No. 86 at PageID.1292.) As the Court noted in its original opinion, the Sixth Circuit "requir[es] a plaintiff, at a minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993). Further, a claim of fraud under Michigan law may not be based upon a promise of future performance unless the alleging party can show by clear and convincing evidence that the promisor made the promise in bad faith without the intention (at the time of the making of the promise) to perform. *See Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976).

Eastwood, realizing its weaknesses with respect to these claims, implores the Court in its original response to "apply a less stringent standard based upon no discovery," citing to one case out of the Eastern District of Michigan for that proposition. (ECF No. 140 at PageID.2357.) However, that case does not vitiate the great weight of the case law. *See, e.g., Coffey*, 2 F.3d 157.

---

[9] The Court finds that this proposal was sensible, and preserved Eastwood's right to appeal. However, because the magistrate judge granted Eastwood leave to file an amended complaint, the fraud counts were dismissed for failure to meet pleading standards (rather than on summary-judgment grounds like the other claims), and the order denying reconsideration did not address those fraud claims, formal adjudication is necessary. That does not mean, however, that the Court needs to exert much effort to dispose of these claims.

Eastwood's sparse amendments with respect to the fraud claims come nowhere close to meeting heightened pleading standards. The Court is not technically bound by its prior opinion and order, as "[t]he law of the case doctrine is not . . . a barrier to correction of judicial error." *Loumar, Inc. v. Smith*, 698 F.2d 759, 764 (5th Cir. 1983). "It is a rule of convenience and utility and yields to adequate reason," and the doctrine does not "bind . . . with jurisprudential straps." *Id.* Nonetheless, "[a] judge should hesitate to undo his own work," and the Court will decline the invitation here, to the extent any remains.[10] *Id.* Accordingly, the Court **DISMISSES** Eastwood's fraud counterclaims for failure to meet the pleading standards under Rule 9(b), and incorporates its prior opinion and order with respect to those claims here, in total.[11] (*See* ECF No. 86.)

## ORDER

Consistent with the accompanying opinion, and previous opinions and orders regarding these claims hereby incorporated (*see* ECF Nos. 86 and 198), the Court **ORDERS** the following:

(1) The Court denied Eastwood's motion for reconsideration with respect to the claims that it had previously granted Wal-Mart's motion for summary judgment on (*see* ECF Nos. 121, 138, 198); thus, along with the Court's reasoning in that order and its original opinion and order (*see* ECF No. 86), Eastwood's counterclaims on breach-of-contract, equitable relief, and promissory estoppel grounds contained in the amended complaint are affirmed to have been **DISMISSED**, and do not require adjudication. Thus, the Court **DENIES AS MOOT** Plaintiff's motion with respect to those claims.[12] (ECF No. 123.)

(2) No prior order fully addressed Eastwood's *amended* fraud claims, which were dismissed on Rule 9 (and not summary-judgment) grounds; thus, the Court **GRANTS** Plaintiff Wal-Mart's motion to dismiss (ECF No. 122) on Defendant Eastwood's fraud counterclaims.

**IT IS SO ORDERED.**

Date:   March 11, 2016                              /s/ Paul L. Maloney
                                                    Paul L. Maloney
                                                    Chief United States District Judge

---

[10] *See supra* note 8 and accompanying text.
[11] The motion was titled as one for summary judgment, but Wal-Mart's arguments that the amended claims fail to meet pleading standards are availing. (*See, e.g.*, ECF No. 123 at PageID.2049 ("[The] claims fail the Rule 9 test.").)
[12] Even if the claims required additional adjudication, the amendments to the complaint fail to move the needle. The Court is confident to rest its reasoning on the original grounds contained in the opinion and order. (*See* ECF No. 86.)